UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
YULIA CASTELLANO,                                           Civil Action No.: 17-cv-795

                              Plaintiff,

        -against-                                           **COMPLAINT**

                                                           **PLAINTIFF DEMANDS
                                                           A TRIAL BY JURY**

THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE DEPARTMENT,
ANTHONY MANTELLINO, THOMAS H.
DELAHANTY and ANTHONY GUADAGNO,

                              Defendants
--------------------------------------------------------------------X

        Plaintiff, YULIA CASTELLANO ("CASTELLANO"), appearing by her attorneys, AKIN

LAW GROUP PLLC, complains of the Defendants THE CITY OF NEW YORK ("CITY"), THE

NEW YORK CITY POLICE DEPARTMENT ("NYPD"), ANTHONY MANTELLINO

("MANTELLINO"), THOMAS H. DELAHANTY ("DELAHANTY"), and ANTHONY

GUADAGNO ("GUADAGNO"), as follows:

1. Plaintiff CASTELLANO brings this proceeding to remedy Defendants' discrimination on

   the basis of sex / gender, national origin, sexual harassment, hostile work environment and

   to remedy retaliation for her opposition to such unlawful employment actions, in violation

   of:  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq.* ("Title VII"), the

   New York State Human Rights Law, Executive Law § 296 et seq. (the "Human Rights

   Law"); and the Administrative Code of the City of New York § 8-101 et seq. (the "City

   Law").

**JURISDICTION AND VENUE**

2. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.

3. This court has federal question jurisdiction over the Title VII of the Civil Rights Act of 1964 claims asserted in this complaint, pursuant to 28 U.S.C. §1331.

4. The Court also has supplemental jurisdiction over the Human Rights Law claims and City Law claims as the facts supporting these causes of action also arise from the same nucleus of events forming the basis for the federal causes of action.

5. Plaintiff filed a Charge of Discrimination No.520-2016-01962 with the United States Equal Employment Opportunity Commission ("EEOC").

6. The EEOC sent a Notice of Right To Sue to Plaintiff dated November 16, 2016 and Plaintiff brings the current action within the 90-day statutory limit.

7. Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

**PARTIES**

8. That at all times herein relevant, Plaintiff CASTELLANO is an individual who resides in the State of New York, Richmond County.

9. That at all times herein relevant, Defendant CITY was and is a municipality within the state of New York.

10. That at all times herein relevant, Defendant NYPD was and is a municipal police agency of Defendant CITY.

11. That at all times herein relevant, Defendant NYPD is located at the premises more commonly known or referred to as 1 Police Plaza, New York, NY 10038.

12. That at all times herein relevant, Plaintiff CASTELLANO was and is an employee of Defendant NYPD.

13. That at all times herein relevant, Defendant DELAHANTY was and is an employee of Defendant NYPD.

14. That at all times herein relevant, Defendant DELAHANTY was the inspector of the 122 Precinct at Defendant NYPD.

15. That at all times herein relevant, Defendant DELAHANTY was and is a supervisor / manager of Plaintiff CASTELLANO during their employment with Defendant NYPD.

16. That at all times herein relevant, Plaintiff CASTELLANO was and is in subordinate relationship in regards to Defendant DELAHANTY with regards to their employment with Defendant NYPD.

17. That at all times herein relevant, Defendant DELAHANTY had the authority to promote, demote, transfer, discipline, reward and/or sanction Plaintiff CASTELLANO with regards to their employment with Defendant NYPD.

18. That at all times herein relevant, Defendant DELAHANTY had the authority to recommend the termination of Plaintiff CASTELLANO with regards to her employment with Defendant NYPD.

19. That at all times herein relevant, Plaintiff CASTELLANO would be given directives and take work orders from Defendant DELAHANTY with regards to their employment with Defendant NYPD.

20. That at all times herein relevant, Defendant MANTELLINO was and is an employee of Defendant NYPD.

21. That at all times herein relevant, Defendant MANTELLINO was a Sergeant at 122 Precinct of

Defendant NYPD.

22. That at all times herein relevant, Defendant MANTELLINO was and is a supervisor / manager of Plaintiff CASTELLANO during their employment with Defendant NYPD.

23. That at all times herein relevant, Plaintiff CASTELLANO was and is in subordinate relationship in regards to Defendant MANTELLINO with regards to their employment with Defendant NYPD.

24. That at all times herein relevant, Defendant MANTELLINO had the authority to promote, demote, transfer, discipline, reward and/or sanction Plaintiff CASTELLANO with regards to their employment with Defendant NYPD.

25. That at all times herein relevant, Defendant MANTELLINO had the authority to recommend the termination of Plaintiff CASTELLANO with regards to her employment with Defendant NYPD.

26. That at all times herein relevant, Plaintiff CASTELLANO would be given directives and take work orders from Defendant MANTELLINO with regards to their employment with Defendant NYPD.

27. That at all times herein relevant, Defendant GUADAGNO was and is an employee of Defendant NYPD.

28. That at all times herein relevant, Defendant GUADAGNO was the former captain or commanding officer of the Staten Island Ferry Security Unit at Defendant NYPD.

29. That at all times herein relevant, Defendant GUADAGNO was and is a supervisor / manager of Plaintiff CASTELLANO with regards to their employment with Defendant NYPD.

30. That at all times herein relevant, Plaintiff CASTELLANO was and is in subordinate relationship in regards to Defendant GUADAGNO with regards to their employment with

Defendant NYPD.

31. That at all times herein relevant, Defendant GUADAGNO had the authority to promote, demote, transfer, discipline, reward and/or sanction Plaintiff CASTELLANO with regards to their employment with Defendant NYPD.

32. That at all times herein relevant, Defendant GUADAGNO had the authority to recommend the termination of Plaintiff CASTELLANO with regards to her employment with Defendant NYPD.

33. That at all times herein relevant, Plaintiff CASTELLANO would be given directives and take work orders from Defendant GUADAGNO with regards to their employment with Defendant NYPD.

## FACTS

34. On or about July 1, 2004 Plaintiff CASTELLANO commenced her employment with the Defendant NYPD.

35. That at all times herein relevant, Plaintiff CASTELLANO was employed at Defendant NYPD as a police officer.

36. That at all times herein relevant, Plaintiff CASTELLANO was a stellar employee during her employment with Defendant NYPD.

37. That at all times herein relevant, Plaintiff CASTELLANO's work performance was above average during her employment with the Defendant NYPD.

38. In or around January 2005 Plaintiff CASTELLANO was assigned to 122 Precinct, located at 2320 Hylan Blvd, Staten Island, NY 10306.

**SEX / GENDER DISCRIMINATION AND RETALIATION**

39. Commencing in or around February 2006 Plaintiff CASTELLANO became the target of discrimination against by the Defendants because of her sex / gender.

40. That at all times herein relevant, the Defendants treated Plaintiff CASTELLANO less favorably than similarly situated to her male employees, because she is a woman.

41. By way of example, Plaintiff CASTELLANO was involved in a dangerous shooting incident on February 16, 2006, but received no recognition, while upon information and belief, Defendant NYPD's male employees (e.g. Nesimi, Roman, Ortiz, Suo, Patton) received special and preferential assignments, commendations and Police Officer Nesimi received tax-free disability benefits.

42. On September 26, 2006, Defendant MANTELLINO ordered Plaintiff CASTELLANO to work at Defendant NYPD's headquarters as a security personnel, despite her increased workload in the domestic violence office, while male employees (with less seniority and workload) were not so required by the Defendants.

43. On September 27, 2006, Plaintiff CASTELLANO filed a complaint with the Office of Equal Employment Opportunity ("OEEO complaint") at Defendant NYPD against Sergeant Mantellino for his constant harassment and disparate treatment. The complaint was recorded via telephone call and INQUIRY # 62706, and CASE # 0348s06 were assigned.

44. In response to her OEEO complaint, Plaintiff CASTELLANO became the target of retaliation and further discrimination by the Defendants.

45. On October 11, 2006, only two weeks after the OEEO complaint, Defendant MANTELLINO issued Plaintiff a write up (Command Discipline) for being "discourteous".

46. That at all times herein relevant, Plaintiff CASTELLANO's OEEO complaint became common knowledge at Defendant NYPD, in violation of the Defendants' policies.

47. That at all times herein relevant, Defendant NYPD employees would socially isolate Plaintiff CASTELLANO at workplace in further retaliation against her for making an OEEO complaint.

   a. Since October 17, 2006, Police Officer Kerry Colangelo, after questioning the Plaintiff about the OEEO complaint, never spoke to Plaintiff again.

   b. Since, October 26, 2006, Police Officer Karen Gibbs, who was a Liaison for the OEEO, refused to talk or converse with Plaintiff.

   c. Karen Gibbs [Plaintiff's partner, a police officer] became abrupt and unfriendly with Plaintiff after her OEEO complaint was known by everyone at the precinct, although she was friendly with her prior to the complaint.

   d. On October 26, 2006, Police Officer Robert Zaleski [driver of Defendant MANTELLINO] blocked Plaintiff's vehicle, preventing her from leaving the parking lot for almost an hour, in further retaliation against Plaintiff. Defendant MANTELLINO and Mr. Zaleski laughed at Plaintiff for being unable to move her car.

48. On December 5, 2006, Plaintiff CASTELLANO met with Police Department Office Of Equal Employment Opportunity representatives to report the retaliation she faced after her OEEO complaint filed on September 27, 2006. Her complaints were made to no avail.

49. On December 10, 2006, Plaintiff CASTELLANO was denied her request to leave early by Keith Rossiter [sergeant], who assigned Plaintiff with additional assignments instead, resulting in Plaintiff staying at work past her scheduled shift. Other police officers requests for leave were approved promptly, while Plaintiff was retaliated against for filing an OEEO complaint.

50. Upon information and belief, Defendant MANTELLINO would influence other employees (e.g. Sergeant Sciacca, Lieutenant Lomando, Jennifer Cruz, etc.) not to approve Plaintiff's requests for leave of absence (days off) as well as requests for additional training in further retaliation against her for filing an OEEO complaint.

51. By way of example, on January 8, 2007 Plaintiff requested "insurance reduction" and "plain clothes"

trainings, but was ignored by Mr. Rossiter [sergeant], who assigned Daniel Sciacca (male) and Mr. Parco (male) for such training instead.

52. That at all times herein relevant, on several occasions after the 2006 complaint, Sergeant Daniel Sciacca would team up in retaliation against Plaintiff by threatening to "throw her out of Domestic Violence Unit".

53. Defendants' less favorable treatment of the Plaintiff has continued throughout her employment with the Defendants.

54. On October 2, 2008, Defendant DELAHANTY relieved Plaintiff CASTELLANO as a Domestic Violence Officer, and ordered her with no explanations to work midnights instead (original tour was day tours) in retaliation for her complaint.

55. On October 13, 2008, Defendant DELAHANTY walked into the Midnight Roll Call and sarcastically laughing at Plaintiff said "How is midnights treating you?" to mock and embarrass the Plaintiff in front of her coworkers.

56. On January 14, 2009, Defendant DELAHANTY transferred Plaintiff to the Satellite Precinct, which was a trailer, with no private facilities, while Plaintiff was pregnant, discriminating against the Plaintiff based on her gender as well as in retaliation for her complaint.

57. On April 1, 2009, the Defendants transferred Plaintiff to the Viper Unit, which contained unsanitary conditions, like: roaches, rodent feces, radiation exposure from multiple video surveillance monitors, pesticides, and poor ventilation, while Plaintiff was pregnant.

58. On or around April 2009, Plaintiff was given undesirable hours again and undesirable days off, while other employees with less seniority were allowed to stay at more coveted and preferred positions in the Precinct.

59. Due to the unsanitary and stressful working conditions, on April 24, 2009, Plaintiff was rushed to emergency room via ambulance with pregnancy complications.

60. In further retaliation and discrimination, Plaintiff CASTELLANO was referred to as "**Rat**" and / or

"**Russian Rat**", by the Defendant NYPD employees on a regular basis. For example, In June 2011, as Plaintiff was crossing the street near the 122 Precinct to start her shift, a man in a white unmarked van, pulling out of the secured 122 Precinct parking lot yelled out to Plaintiff "Russian Rat".

61. On October 13, 2011, Police Officer Eric Loria stated to Plaintiff, "You made a complaint on Mantellino. What happened when you made complaint? You got fucked, right?"

62. Plaintiff speaks Russian and English and her National Origin is Ukrainian, formerly of the Soviet Union. The 122 Precinct is located in predominantly Eastern European community, which a large percentage speak Russian. Plaintiff was subjected to retaliation by Defendants NYPD when she was denied the Community Affairs Officer position she requested in September 2012, even though she was qualified for the position. .

63. That at all times herein relevant throughout Plaintiff's employment with the Defendants, the Defendants assigned less senior and less qualified employees more favorable assignments than Plaintiff CASTELLANO in furtherance of retaliation.

64. By way of example, September through November 2011, Plaintiff CASTELLANO was assigned less desirable assignments like hospitalization of prisoners, solo foot posts, telephone switchboard, security services at Defendant NYPD's headquarters, and Room 124 (clerical duties) – all less favorable duties, while Plaintiff's coworkers were assigned better duties and responsibilities, such as radio cars, desirable details, and being able to work with their chosen partners.

65. As the result of foregoing, the Defendants created a hostile work environment for Plaintiff at Defendant NYPD.

66. That at all times herein relevant, Plaintiff CASTELLANO was unable to tolerate discrimination she was subjected to, at Defendant NYPD, and decided to complain about the disparate treatment again.

67. On November 10, 2011 Plaintiff CASTELLANO complained to Inspector Richard Gutch (Commanding Officer of the 122 Precinct) about being removed from the domestic violence unit due to

her OEEO complaint, and that she was now being referred to a "Russian Rat" by her supervisors and coworkrts. She also complained about the two officers approaching her on October 13, 2011, stating, "you made OEEO complaints, and what happened, you got fucked, right?", and that other police officers and supervisors did not speak to her and did not want to work with her after she made the complaint. In response, Inspector Gutch assured Plaintiff that he would make "a lot of changes" and promised future advancement, which never happened.

68. On November 11, 2011, Plaintiff CASTELLANO complained about retaliation she was subjected to at Defendant NYPD to Sergeant Despaigne at OEEO to no avail, reference No. I-11-0954.

69. On or around November 2011, the Defendants continued to assign Plaintiff with less favorable assignments (e.g. prisoners' hospitalization, foot posts, telephone switchboard, security at headquarters).

70. On February 27, 2012 Plaintiff CASTELLLANO applied for, but was passed over for a traffic safety officer position, for which employees with less seniority, police officers Moschella and Barry were hired.

71. On several occasions between May and November 2012, Plaintiff CASTELLANO was separated from her partner of the day and given undesirable assignments like solo foot posts, and hospitalized prisoners, than similarly situated to her coworkers with less seniority.

72. In or around November 2012, Plaintiff CASTELLANO was passed over for a school safety officer position, for which police officer Selkirk, less senior than Plaintiff, was hired.

73. In or around November 2012 Plaintiff CASTELLANO was passed over for the traffic officer position, for which police officer Parco, male and less senior than Plaintiff, was hired.

74. On December 23, 2012, Plaintiff CASTELLANO complained to Inspector Gutch that she was passed over for the domestic violence officer, school safety officer and traffic officer positions.

75. Although Inspector Gutch called Captain Veneziano (Commanding Officer of the 122 Precinct) in front of Plaintiff, saying, "give Castellano next available spot in precinct", Plaintiff CASTELLANO continued to request other positions, was ignored and bypassed for the new openings at Defendant

NYPD.

76. On March 11, 2013 Plaintiff CASTELLANO was passed over again for a training officer position, for which police officer Payne. less senior than Plaintiff, was hired.

77. On March 5, 2014, Plaintiff was interviewed by Defendant GUADAGNO for a position at the Ferry Security Unit and Plaintiff requested that she be considered for the position only if she could be given the day tour position.

78. In June 2014, Plaintiff was officially transferred to the Ferry Security Unit and ordered to work midnights, while male police officers who were transferred to Ferry Security Unit around the same time were accommodated with the tours they preferred.

79. On October 4, 2014, while working at the Ferry Security Unit, the Plaintiff was involved in physically restraining and preventing an attempted suicide during which she sustained injuries that required medical attention. The intervention was noted and commended by her superiors. Plaintiff requested official department recognition for the heroism and professionalism for her involvement in the rescue but was denied any department recognition.

80. That at all times herein relevant, the Defendant NYPD employees refused to address Plaintiff's harassment report she filed on July 20, 2015. Plaintiff's husband was a witness to an attempted homicide and shortly after received threats of bodily harm. Plaintiff was concerned for her family's safety and called the Threat Assessment Unit and advised them of the threats and Plaintiffs fear for her family's safety. No action from Defendant NYPD to protect Plaintiff or her family.

81. On October 28, 2015 Sergeant Ernest Urbina ordered Plaintiff CASTELLANO, while on Limited Capacity Duty assignment due to being injured while in the line of duty, to clean the kitchen, microwave, and fridge, while Joseph Hionas (male) and Mr. Kevin Askin (male) were never required to clean a fridge by the Defendants.

82. On October 29, 2015 Plaintiff CASTELLANO complained to Detective Checka at the Internal

Affair Bureau (hereinafter "IAB") (Log No. 2015-33261) about Sergeant Urbina discriminating against her because of her gender and/or retaliating against her for making a complaint, by requiring to clean the kitchen, while not requiring same from male employees (Joseph Hionas, Kevin Askin).

83. That at all times herein relevant, the Plaintiff's co-workers such as Kevin Askin continued to refer to Plaintiff as "**Rat**", and inquire from her "**who are you ratting out this time**" on a regular basis.

84. November 10, 2015, on the day that Plaintiff was required to testify at Internal Affairs against Defendant GUADAGNO, Police Officer Kevin Askin inquired from Plaintiff "**who are you ratting out this time**".

85. On November 11, 2015 Plaintiff CASTELLANO complained to IAB about Defendant NYPD employees referring to her as a "Rat".

86. Defendants' less favorable treatment of the Plaintiff has continued throughout her employment with the Defendants.

87. That at all times herein relevant, the Defendants continued to retaliate against Plaintiff CASTELLANO for complaining about the Defendants' unlawful employment practices.

## SEXUAL HARASSMENT AND RETALIATION

88. During her employment with Defendant NYPD Plaintiff CASTELLANO was subjected to numerous incidents of sexual harassment by the Defendant NYPD's employees.

89. On October 4, 2006 Lieutenant Belford approached Plaintiff CASTELLANO and proceeded to inquire about her background and marriage life. Plaintiff responded to Lieutenant Belford's inappropriate comments, simply stating that she is happily married.

90. On October 5, 2006, Lieutenant Belford called the domestic violence office, where Plaintiff worked, and inquired about where Plaintiff lived, how was her marriage going, where she liked to hang out, etc. He invited her for a coffee, and inquired if he could come over to her place to "watch a game". Lieutenant Belford requested Plaintiff "not to say anything to the girls in the office, because they like to gossip". Plaintiff was made to feel extremely uncomfortable with the Lieutenant's line of questioning and again advised Lieutenant Belford that she was happily married, and quickly hung up the phone.

91. On November 2, 2013, Plaintiff was inappropriately approached by Sergeant Victor Pal, who asked her numerous questions about her marriage and kids. Then he proceeded to ask Plaintiff for her personal cellphone number.

92. On or about January 30, 2014 Sergeant Victor Pal sent a text message to Plaintiff, inviting her to a Rangers' Game. Plaintiff advised that she was married and declined the invitation.

93. Commencing in or around May 10, 2015 Defendant GUADAGNO would send Plaintiff CASTELLANO inappropriate text messages like, "you have a great ass…perfectly shaped", "you look so hot".

94. That at all times herein relevant, Plaintiff CASTELLANO brushed off inappropriate comments, responding, "I am going to disregard this".

95. That at all times herein relevant, Defendant GUADAGNO continued to make sexual advances in regards to Plaintiff, saying, "I have a ton of liquor, come over my house".

96. On June 7, 2015 Plaintiff CASTELLANO requested from Defendant GUADAGNO to cease any sort of communications with her.

97. On June 9, 2015, in complete disregard of Plaintiff's requests, Defendant GUADAGNO continued to sexually harass Plaintiff by calling her through Sergeant George Arabella's phone,

asking her personal questions, and suggesting to write down his new phone number.

98. That at all times herein relevant, Plaintiff CASTELLANO again requested from Defendant GUADAGNO to cease any communications with her, which he ignored.

99. On or about June 25, 2015 when Plaintiff CASTELLANO was jogging in the park with her son, Defendant GUADAGNO approached Plaintiff, saying he wanted to call her. Plaintiff protested against his inappropriate behavior, requesting not to call her ever again.

100.    That at all times herein relevant, Defendant GUADAGNO's behavior made Plaintiff extremely uncomfortable.

101.    That at all times herein relevant, Plaintiff CASTELLANO felt obligated to engage in a conversation or respond to Defendant GUADAGNO's comments because he was her superior and he could have a detrimental affect on her career.

102.    As the result of Defendant GUADAGNO's sexual harassment, Plaintiff CASTELLANO was concerned about her safety.

103.    On July 4, 2015, Gregory Castellano, Plaintiff's husband, on behalf of Plaintiff CASTELLANO made a complaint to Defendant NYPD's IAB about the sexual harassment his wife was subjected to by the Defendant GUADAGNO and possible official misconduct, and abuse of authority (IAB log #2015-19072). Detective Watson assured Plaintiff CASTELLANO that an investigation will be conducted into her complaints, but the Defendants took no remedial actions to redress the issue.

104.    That at all times herein relevant, the Defendant NYPD failed to assign a different unit to investigate Plaintiff's complaint about the sexual harassment, despite being aware that Defendant GUADAGNO (the harasser) worked in IAB, where Plaintiff's filed the complaint.

105.    That at all times herein relevant, the Defendants continued to subject Plaintiff to sexual

harassment, and retaliate against her for complaining about the Defendants' unlawful employment practices.

106.    On August 9, 2015, Sergeant Victor Pal sent multiple text messages to Plaintiff CASTELLANO, despite being advised his advances were unwelcome.

107.    On August 9, 2015, Plaintiff CASTELLANO's husband Gregory Castellano, called the 122 Precinct to make a complaint about Sergeant Pal about the inappropriate text messages, not knowing that he will be the one answering the phone.  Gregory Castellano asked to speak to Sergeant Pal's immediate supervisor, Sergeant Pal refused to put his supervisor on the phone.  Plaintiff reported the incident to IAB Log #2015-22881.

108.    That at all times herein relevant, the hostile work environment at Defendant NYPD escalated with time.

109.    On November 10, 2015, the day Plaintiff appeared for investigation meeting regarding her sexual harassment complaint, Kevin Askin [police officer] inquired from her, "**who are you ratting out this time?**"

110.    Plaintiff's Co-workers including Police Officer Kevin Askin, included Plaintiff in a group text message, involving highly inappropriate, offensive, sexual, sex/gender, race related comments, and a disturbing video of deviate sexual behavior, despite being aware that Plaintiff complained of sexual harassment to Defendant NYPD (July 4, 2015, August 9, 2015, October 29, 2015 and January 5, 2016).

111.    By way of example, the text messages include: "rape fight", "it only hurts the first time", "golden shower", "BJs for everyone", "Can u 2 suck each other somewhere else…", "..call Kevin Askin At 1-800-suk-a-dick", "because you give good head", "… pussy", etc.

112.    That at all times herein relevant, Plaintiff CASTELLANO found messages exchanged by male employees of Defendant NYPD highly inappropriate for workplace.

113.    Plaintiff was highly offended by the text messages she received in this group text message and never participated in the conversation.

114.    In or around January 2016, when Plaintiff CASTELLANO received these text messages, Plaintiff was the only woman to work at the ferry security unit.

115.    Some of the messages exchanged in the group directly/indirectly referred to Plaintiff. By just a few examples:

   a)   "**fuck the ferry!!!and everyone [including Plaintiff] who works there**!"

   b)   "**I am no longer talking, texting, sexting on the phone today for you crybabies**. You get what you get. Deal with it and NUT UP. **Minus castelano**"

   c)   "P.s. **your all [including Plaintiff]  a bunch of cry baby bitchs**"

   d)   "**Your ferry cops [including Plaintiff] …No one gives a fuck about u**"

   e)   "**fucking pussies [referring to ferry cops, including Plaintiff]. Take that fucking cock down your throat…**"

116.    On January 5, 2016, Plaintiff CASTELLANO continued to complain to IAB at Defendant NYPD about the sexual harassment she was subjected to no avail.

117.    On January 16, 2016, despite Plaintiff's complaints, Plaintiff's male co-workers, continued to include Plaintiff CASTELLANO in the group text messaging, sending inappropriate messages, like, "your all [including Plaintiff] a bunch of cry baby bitches", "fucking pussies. Take that fucking cock down your throat…"

118.    On January 29, 2016 Mr. Hionas [police officer] sent a text message to Plaintiff, saying "…I may have to knock on your door", causing Plaintiff CASTELLANO to fear for her safety; Plaintiff immediately contacted Lieutenant Zuss at IAB of Defendant NYPD to report the harassment.

119. As the result of Defendants' unlawful employment practices Plaintiff CASTELLANO suffered and continues to suffer a severe emotional distress.

120. Defendants unlawfully harassed, discriminated against and retaliated against Plaintiff.

121. Defendants treated Plaintiff differently because of her sex.

122. Plaintiff's position at her job was intolerable as a result of the discrimination and harassment by the Defendants to which she was subjected, and no reasonable person in Plaintiff's position could be expected to continue working under those conditions.

123. Defendants' unwanted hostile actions created a hostile work environment which no reasonable person could be expected to tolerate.

124. Throughout Plaintiff's employment with the Defendants, Plaintiff would protest and complain to Defendants about this unlawful conduct.

125. Despite said complaints and protests, Defendants continued to unlawfully discriminate against and harass the Plaintiff.

126. During Plaintiff's employment with the Defendants, Plaintiff was and continued to be regularly exposed to a discriminatory, offensive, and hostile work environment.

127. Defendants' actions and conduct were intentional and intended to harm the Plaintiff.

128. After Plaintiff protested to the Defendants, Plaintiff became the subject of retaliation by the Defendants.

129. Plaintiff was shunned and ostracized by her co-workers and her superiors after her numerous written and verbal complaints in retaliation.

130. Plaintiff was singled out by co-workers and her superiors and excluded from the group after her numerous written and verbal complaints were disclosed to her co-workers by her Defendants NYPD in retaliation.

131. Plaintiff was denied advancements, training, recognition for her good work, and was transferred to undesirable positions as discrimination and in further retaliation for complaining about the discrimination she was subjected to.

132. The Plaintiff has been unlawfully discriminated and retaliated against, was humiliated, and has been degraded and belittled; and as a result, suffers the loss of rights, emotional distress, loss of income, earnings and sustained personal injuries.

133. As a result of the Defendants actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

134. As a result of the Defendants discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

135. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

136. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

137. As Defendants conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.


**AS AND FOR A FIRST CAUSE OF ACTION
DISCRIMINATION UNDER TITLE VII**

138. Plaintiff CASTELLANO repeats, reiterates and reallaeges all the above paragraphs as if said paragraphs were more fully set forth herein at length.

139. Title VII provides (among other things) that, "it shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his[her] compensation, terms, conditions, or privileges of employment, because of such individual's… sex [gender]….to limit, segregate, or classify his[her] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his[her] status as an employee, because of such individual's sex [gender]..."

140. By the acts and practices described above, Defendants discriminated against plaintiff CASTELLANO in the terms and conditions of her employment because of her sex/gender in violation of Title VII.

141. Defendants engaged in an unlawful practice by discriminating against the Plaintiff because of her sex/gender.

142. That at all times hereinafter mentioned, Defendants knew that their actions constituted unlawful discrimination and unlawful retaliation in violation of Title VII.

143. That at all times hereinafter mentioned, Defendants acted with malice or reckless disregard and/or with intent in violation of Title VII.

144. Plaintiff CASTELLANO has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of Defendants' discriminatory practices.

145. As a result of the foregoing, the Plaintiff CASTELLANO, seek declaratory relief, compensatory damages, punitive damages, and liquidated damages, together with reasonable attorneys' fees,

costs of this action, pre-judgment and post-judgment interest, and other appropriate relief pursuant to Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

146. Plaintiff CASTELLANO repeats, reiterates and realleges all the above paragraphs as if said paragraphs were more fully set forth herein at length.

147. Title VII Title VII, 42 U.S.C. §2000-e3( a) prohibits retaliation against an individual who engages in Title VII protected activities.

148. By the acts and practices described above, Defendants retaliated against plaintiff CASTELLANO for her opposition to the unlawful discrimination under Title VII.

149. Defendants unlawfully discriminated and retaliated against the Plaintiff for complaining of her sex based discrimination and sexual harassment.

150. Plaintiff CASTELLANO has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of Defendants' discriminatory and retaliatory practices

151. That by reason of the foregoing, the Plaintiff demands a judgment against the Defendants in an amount to be determined at time of trial.

## AS AND FOR A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER NEW YORK STATE LAW

152. New York State Executive Law §296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such

individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

153. Defendants engaged in an unlawful discriminatory practice in violation of New York Executive Law by creating and maintaining discriminatory working conditions and a hostile work environment, discriminating against the Plaintiff because of her disability, denying Plaintiff's request for accommodations, and otherwise subjecting the Plaintiff to a hostile work environment.

154. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR FOURTH CAUSE OF ACTION
## RETALIATION UNDER NEW YORK STATE LAW

155. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

156. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

157. Defendant engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

158. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York State Executive Law.

159. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER NEW YORK CITY LAW

160. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

161. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

162. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions and a hostile work environment, discriminating against the Plaintiff because of her disability, denying Plaintiff's request for a reasonable accommodation, and otherwise subjecting the Plaintiff to a hostile work environment.

163. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION
## RETALIATION UNDER NEW YORK CITY LAW

164. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

165. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter... "

166. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

167. Defendant engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York City Administrative Code.

168. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ONLY AS TO DEFENDANTS MANTELLINO, DELAHANTY and GUADAGNO)

169. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

170. Defendants engaged in extreme and outrageous conduct.

171. Defendants intended to cause, and/or disregard a substantial probability of causing severe emotional distress to the Plaintiff.

172. That at all times hereinafter mentioned there existed a causal connection between the Defendants' conduct and injury sustained by the Plaintiff.

173. That at all times hereinafter mentioned, the Plaintiff sustained and suffers from severe emotional distress.

174. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which

exceeds the jurisdictional limits of all lower Courts.

## DEMAND FOR TRIAL BY JURY

154. Pursuant to Rule 38(b) of the Federal rules of civil Procedure, Plaintiff demands a trial by jury in this action.

## INJURY AND DAMAGES

155. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by federal and state common law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq.,* New York State Executive Law §296 et. seq. and the New York City Administrative Code Title 8, §8-107 et. seq.; and that the Defendants harassed, discriminated against and retaliated against the Plaintiff on the basis of her sex/gender.

B. Awarding Plaintiff compensatory damages for mental, emotional, psychological, and physical injuries, distress, pain and suffering, and for injury to her reputation in an amount that exceeds the jurisdictional limit of all lower courts;

C. Awarding Plaintiff compensatory damages for intentional infliction of emotional distress;

D. Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorney's fees, costs, and expenses;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: February 13, 2017
        New York, New York

                                    Respectfully Submitted

                                    AKIN LAW GROUP PLLC
                                    Attorneys for Plaintiff

                                    /s/ Gulsah Senol
                                    _____
                                    By: Gulsah Senol
                                    45 Broadway, Suite 1420
                                    New York, New York 10006
                                    (212) 825-1400